541 P.2d 338 (1975)
PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Clarence Willie AKINS and Ronnie Vincent McDade, Defendants-Appellants.
No. 74-458.
Colorado Court of Appeals, Div. III.
August 19, 1975.
Rehearing Denied September 9, 1975.
Certiorari Denied November 3, 1975.
*339 J. D. MacFarlane, Atty. Gen., Edward G. Donovan, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Daniel B. Mohler, Thomas C. Donovan, Jr., Colorado Springs, for defendants-appellants.
Selected for Official Publication.
STERNBERG, Judge.
Shortly after eight p. m. on October 22, 1973, four men, two of whom were armed with handguns, entered a Mr. Steak restaurant in Colorado Springs. Acting in close concert, they proceeded to terrorize and rob customers and employees and loot the safe and cash register. One entered by the back door and went immediately to the office where he restrained the manager and looted the safe. He then joined his three cohorts who had entered by the front door and had taken various stations about the restaurant. They emptied the cash register and collected billfolds and other valuables from the numerous patrons and employees who were forced to lie on the floor. The robbers made loud threats, using base obscenities, fired several shots, and pistol whipped, kicked, and otherwise assaulted the employees and customers. About 10 minutes after their entry, they fled the scene with their loot.
In January of 1974, defendants Clarence Willie Akins and Ronnie Vincent McDade were arrested, along with Gregory Lynch and Paul Perry, on charges arising from the robbery. No specific conspiracy charges were filed against the defendants. Lynch pled guilty, and the other three were tried by a jury. Perry was acquitted on all counts, but Akins and McDade were found guilty of nine counts of aggravated robbery, five counts of second degree assault, and one count of felony menacing. Akins was sentenced to a term not less than 25 nor more than 35 years, and McDade to a term of not less than 20 nor more than 25 years. They appeal these judgments. We affirm.
The primary factual issue at the trial was the identity of the perpetrators of the crimes. Several of the victims testified at the trial, identifying various of the defendants, with differing degrees of certainty, as having taken part in the robbery.
Testimony was presented by several informers who said they had heard inculpatory statements made by one or more of the defendants. Included in this class of evidence was the testimony of Frank Johnson, who was living with McDade's sister. He testified that between midnight and one a. m., several hours after the robbery, McDade awakened him, told him that he, Lynch, and Akins had robbed the restaurant and described in detail what had transpired. McDade then showed him a large roll of currency, several credit cards, and wallets that had been ripped to threads. Johnson also testified that McDade's description of the crime implicated Perry. Since Johnson's car had been used in the robbery, McDade gave him $35 as compensation.
Additionally, Johnson testified that the next morning he encountered Akins and Lynch and discussed with them their involvement in the robbery of the Mr. Steak restaurant. They admitted their participation in the crime, and pursuant to Johnson's request, each paid him $5 for use of the car. They also implicated Perry in the crime.
One Betty Clayton testified she overheard a conversation in which Lynch told a Mr. and Mrs. Davis that he had robbed *340 the Mr. Steak restaurant. She did not remember the names of the individuals whom he said had acted with him in the robbery.
Mrs. Davis' testimony was that Lynch had told her of his involvement in the robbery, and that McDade, Perry, and Akins had also been involved. Her husband confirmed the details of that conversation. He also testified that at a later time while incarcerated in the county jail, he encountered Akins, who was also an inmate of that jail, that Akins struck him repeatedly over a period of 15 to 20 minutes, kicked him in the head, and stated to him that, "You told that I robbed Mr. Steak. You made a deal with the District Attorney."
David Thomas testified that his roommate, Lynch, told him that he had committed the robbery with Perry, McDade, and Akins. He also testified that the day after the robbery, he heard Akins "saying something about a big job he had pulled." As noted above, Davis had been beaten severely by Akins as punishment for allegedly having "squealed," and in addition, there was testimony that threats were made on Mrs. Davis' and Thomas' lives, to attempt to insure their silence.
The codefendant, Perry, who was ultimately acquitted of all charges by the jury, testified and presented other witnesses tending to prove alibi. Akins and McDade did not testify relying instead upon cross-examination seeking to attack the certainty of the identification testimony and the reliability of the other witnesses.

I.
The defendants' primary allegation of error is based upon the court's allowing testimony of statements made to third persons after the robbery, which, they contend, should have led to the granting of their motions for separate trials or should not have been admitted into evidence at all.
In support of the latter position, defendants cite a myriad of cases which hold that extra-judicial statements of one defendant are hearsay and thus not competent evidence against his codefendant unless the statements were made during the pendency of a conspiracy and in furtherance of some object of the conspiracy. See, e. g., Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.
While the federal rule as to admissibility of one defendant's inculpatory extra-judicial statements against another is quite stringent, Roberts v. Russell, 392 U. S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100, the state courts need not follow that rule. Dutton v. Evans, 400 U.S., 74, 91 S.Ct. 210, 27 L.Ed.2d 213.
The Colorado Supreme Court has addressed this question on two recent occasions. In People v. Schlepp, Colo., 518 P. 2d 824, after reviewing earlier authority, the court traced the rationale for this exception to the hearsay rule and concluded that although the evidence in that case was largely circumstantial, it was sufficient to show that the defendant and another individual who had also been charged, but who had pled guilty, had acted in concert, and thus, the declarations of the second individual out of the presence of the defendant were admissible in evidence.
In People v. Braly, Colo., 532 P.2d 325, a case similar to the instant appeal, the court stated that:
"[T]he issue is whether there was evidence, direct or circumstantial, apart from the hearsay statements, sufficient to support a determination of the existence of the conspiracy."
On the facts in that case, the Supreme Court held that there was not such evidence. Here, however, there was independent proof of efforts by defendants to conceal evidence by destroying wallets, threatening those who had been told of the crime to insure their silence, paying off one whose automobile had been used in the commission of the crime, and even assaulting one believed to be an informer. We hold, therefore, that on these facts, even in the absence of a formal charge of conspiracy, the independent evidence showing a *341 concert of action by the defendants after the crime is sufficient to support a determination of the existence of a conspiracy. Thus, an inference by the trial court was justified that the conspiracy among the robbers, which had commenced at the time of the inception of the crime, continued for the purpose of concealing it and avoiding prosecution.
The issue of admissibility of the testimony initially presented a question of law to be decided by the trial judge. Carbo v. United States, 314 F.2d 718 (9th cir.). The court below made a special finding to the effect that sufficient evidence of a continuing conspiracy had been adduced to warrant submission of the testimony to the jury. Following the trial court's decision to admit the testimony, it then became the function of the jury to determine the weight, if any, to be accorded to it. Standard instructions were given the jury on credibility and in particular it was instructed that the testimony of an "informer" should be examined and weighed with greater care than that of other witnesses. That the jurors did weigh the evidence is apparent from the fact that while the jury convicted these two defendants, it acquitted the third defendant, Perry, despite the fact that he was mentioned as an accomplice in several of the extra-judicial statements. Contrary to defendants' contention, the court need not instruct the jury specially on what burden of proof it must apply to a conspirator's statement.
Based upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, defendants also contend that their Sixth Amendment rights were impugned by failure to grant their motions for separate trials. They urge that testimony of inculpatory statements that one made to an informer was not competent evidence against the other since there was no opportunity to confront and cross-examine the alleged maker of the statement in the joint trial. Thus, for example, Akins would have us reverse since he did not have the opportunity to confront and cross-examine McDade in regard to Johnson's testimony about McDade's statement which involved Akins in the crime. Likewise, McDade, in a separate trial, the argument would go, could have called Akins as a witness to refute his alleged remarks to Davis incriminating the former. While the contention is an intriguing one, and while it might have been better practice for the trial court to have granted separate trials because of the intricacy of the issues encountered, nevertheless, when examined against the factual background of this case, the argument must fail.
It is not every violation of a federal constitutional right that requires reversal of a conviction. In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, the Supreme Court, in language particularly appropriate here, stated:
"We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding, as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. All 50 States have harmless-error statutes or rules . . . . None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." (emphasis supplied)
Here, the evidence clearly admissible against Akins included the identification testimony of the victims and the inculpatory statements attributed to Lynch by Johnson, Clayton, Mrs. Davis, Mr. Davis, and Thomas, Akins' self-incriminatory conversations with Johnson, Davis, and Thomas, and Akins' action in paying off Johnson. The evidence against McDade also included identification testimony of the victims, *342 McDade's action in paying off Johnson, Lynch's inculpatory statements, and the leaving of a sack of stolen items on Johnson's table, plus McDade's self-incriminatory remarks to Johnson. This mass of evidence was more than ample to have convicted each defendant without the disputed evidence. Therefore, we are satisfied, beyond a reasonable doubt, that the evidence of McDade's inculpatory remarks about Akins and vice versa was merely cumulative and that it did not contribute to the conviction of either. Thus, its admission was harmless error. See People v. Knapp, 180 Colo. 280, 505 P.2d 7; Crim.P. 52(a).

II.
Each of the defendants also contends that the court erred in not giving a tendered instruction setting forth his theory of the case. That instruction is as follows:
"It is the defendant's . . . theory of the case that he denies his guilt of all offenses charged in accordance with Instruction Number 1; that the informers who testified in this case who implicated him, lied about his alleged participation in the robbery; and that the People have failed to prove beyond a reasonable doubt that [defendant] was present at the time when, and the place where, the offenses where [sic] committed.
"If after a full and fair consideration of all the facts and circumstances in evidence, you find that the People have failed to prove beyond a reasonable doubt that the Defendant was present at the time when, and the place where, the offenses charged were allegedly committed, you must find the Defendant. . . . Not Guilty."
The court did instruct the jury on the presumption of innocence, the prosecution's burden of proof, the jury's duty to determine the facts only from admissible evidence, including specificity of time and place, and further instructed the jury that it was the sole judge of the witnesses' credibility in regard to the facts in evidence. The instruction offered by defendants only restated some of the points covered by other instructions, reiterated the general denial of guilt, and contained matters that tend to be argumentative rather than instructive. Thus, it was not error to refuse that instruction. See People v. Medina, Colo., 522 P.2d 1233; Winters v. People, 174 Colo. 91, 482 P.2d 385; People v. Griego, Colo., 517 P.2d 460.
Judgments affirmed.
RULAND and VanCISE, JJ., concur.