The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Charles Raymond SMALL, Defendant-Appellant.

Nos. 79SA166, 79SA385.

Supreme Court of Colorado, En Banc.

June 22, 1981.

Rehearing Denied July 13, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Lynne Ford, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Norman R. Mueller, Deputy State Public Defender, Denver, for defendant-appellant.

ROVIRA, Justice.

The case is a consolidation of two separate appeals brought by the defendant, Charles Raymond Small, as a result of his conviction for first-degree murder in violation of section 18–3–102(1)(b), C.R.S.1973 (1978 Repl. Vol. 8) (the felony murder statute). In case number 79SA385, the defendant argues that he was denied his constitutional rights to due process and a speedy trial as a result of delay in bringing him to trial. *See U.S.Const.* Amend. VI and XIV; *Colo.Const.* Art. II, sec. 16 and 25. In case number 79SA166, he challenges certain rulings made by the trial court relating to the production of a defense investigator's report, the admission of evidence, and the rejection of a tendered jury instruction.[1] We affirm.

The defendant's conviction arose from events which occurred on the evening of August 31, 1973, in Colorado Springs. An automobile driven by Freddie Lee Young stopped in the 1200 block of West Pikes Peak Avenue, and one passenger dragged the only other passenger, the victim, Kenneth Reinert, from the car and left him lying on the street. He had been shot through the right eye and was mortally wounded. His wallet was empty, and his pockets had been turned inside out.

Shortly afterward, the Young automobile was stopped by a Colorado Springs police officer who was investigating an unrelated traffic offense. The officer saw another occupant in the Young car, but this person fled when the vehicle was stopped. Young

1. This case had been filed in the Court of Appeals but was transferred to this court for consolidation with case No. 79SA385 upon the defendant's request. *See* C.A.R. 50.

was questioned briefly and was released without a ticket.

After Young learned he had become a suspect in the homicide, he voluntarily talked to police in Colorado Springs on September 10, 1973, about the killing. He then implicated the defendant as being the other passenger in his car.

At the defendant's trial, which began on October 24, 1977, Young testified that the defendant shot the victim while committing a robbery. Young's testimony was corroborated by another witness, Michael Price, who said that the defendant admitted his role in the homicide to him on the night of the killing and over the course of the next few days while he was helping to fabricate an alibi.

Other facts of significance in this case will be discussed as they relate to the issues on appeal.

## I.

### Case No. 79SA385

The defendant was first charged by indictment with the crimes of first-degree murder and aggravated robbery on September 12, 1973. On the day scheduled for trial, January 14, 1974, the defense was ready to proceed; but the prosecution moved successfully for a *nolle prosequi* order. At that time, Freddie Young was the sole, uncorroborated witness against the defendant. The prosecution stated its reasons for not proceeding as follows:

> "The evidence which The People have to present at this time cannot sustain a conviction because of the credibility of the People's evidence.
>
> "The Colorado Springs Police Department is continuing its investigation in this case.
>
> "As the interests of justice and economy would best be served by a NOLLE PROSEQUI ORDER in this action at this time."

All charges against the defendant were dismissed without prejudice.

On April 23, 1974, after a jury trial, Freddie Young was convicted as an accessory to first-degree murder. His conviction was affirmed by this court. *People v. Young*, 192 Colo. 65, 555 P.2d 1160 (1976).

In 1975 the defendant's chief alibi witness, his half brother Ricky Lewis, was shot and killed.

In early February 1977, two witnesses were discovered who claimed to be able to corroborate Young's version of events. In proceedings before a grand jury held on February 15, 1977, one of these witnesses, Michael Price, testified that the defendant had specifically admitted to him his role in the Reinert killing. Price had been the defendant's friend and stated that he had previously lied to defense counsel and others as part of preparing the defendant's alibi defense for the first scheduled trial. The other grand jury witness testified that the defendant had admitted his role in an unspecified killing very similar to the one at issue. This witness was not called upon to testify at the subsequent trial.

On February 16, 1977, a second indictment was filed charging the defendant with felony murder and aggravated robbery. On April 1, 1977, the robbery charge was dismissed on the prosecution's motion, and the case was set for trial on May 9, 1977. On April 22, 1977, the defense counsel confessed failure to comply with the prosecution's request for discovery concerning alibi and theory of defense. Crim.P. 16(II)(c). The trial date was reset to June 27, 1977. The defendant successfully moved for a continuance on June 10, 1977; and trial was reset to August 22, 1977.

On August 12, 1977, the murder indictment was quashed in response to the defendant's motion alleging that the grand jury proceeding had violated his right to due process. The trial court found that, aside from the substantive evidence which would be admissible against the defendant at trial, the prosecution had presented unsubstantiated rumors to the grand jury about the defendant's general criminal activity and had failed to present known exculpatory evidence. It ruled that such a

procedure violates fundamental fairness and dismissed the case without prejudice.[2]

On August 19, 1977, an information was filed charging the defendant with felony murder; and a trial date was set for October 24, 1977. On September 22, 1977, the defendant first raised his claim that the information should be dismissed because of the prosecution's delay in bringing him to trial. At the defendant's request, the trial court postponed a hearing of this motion until after trial on the merits.

On October 24, 1977, the defendant's jury trial began; and he was convicted on October 29, 1977. On December 21, 1977, the trial court granted defendant leave to sever his speedy trial claim from other issues raised in his motions for new trial or acquittal; it denied these motions and sentenced him to life imprisonment.

On March 15, 1979, appellate counsel presented the defendant's constitutional speedy trial claim to the court by means of a Crim.P. 35(b) motion.[3] We here address the trial court's denial of this motion.

### A.

The People argue that the trial court lacked jurisdiction to hear the defendant's 35(b) motion while the appeal of his conviction was still pending. This contention is premised on two claims: (1) that the appellate court has exclusive jurisdiction of the case once appeal is sought and (2) that the principle of the conservation of judicial resources militates against concurrent jurisdiction in both trial and appellate courts.

The trial court allowed the defendant to raise the claim at a post-conviction hearing that his conviction had been obtained in violation of constitutional speedy trial and due process rights. See Crim.P. 35(b)(1)(I). The issue had originally been raised before trial, but the court adopted a procedure which permitted it to consider the speedy trial claim in relation to the relevant facts which were developed at trial.

"The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only *after* trial that that claim may fairly be assessed." (Emphasis added.) *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978).

The court did not address the speedy trial issue as part of the defendant's motion for a new trial because defense counsel wished to testify about it. The court allowed the defendant's attorneys to withdraw from the case prior to the Crim.P. 35(b) hearing so that they would not be forced to be witnesses and advocates in the same proceeding. The prosecution made no objection to this decision, and there is no indication from the record that the 35(b) procedure was adopted to substitute for normal appellate practice.

Under the circumstances of this case, the trial court's assumption of jurisdiction was within its discretion. Only by such means could alleged errors of constitutional magnitude be decided which would not otherwise have been raised and ruled upon.

### B.

This appeal raises no claim of a denial of the defendant's statutory right to a speedy trial under section 18–1–405, C.R.S.1973 (1978 Repl. Vol. 8), or of a right to dismissal of his case by court rule, Crim.P. 48(b). The defendant argues here that his constitutional speedy trial rights have been violated. At the heart of this claim is the fact that his half brother, a potential witness in support of his alleged alibi, died in the interval between the dismissal of charges for first-degree murder and aggravated robbery on January 14, 1974, and the time he was again indicted on identical charges on February 16, 1977. Whatever impairment his defense may have suffered must be considered in light of our overall compar-

---

**2.** No appeal was taken from this decision, and we express no opinion on the validity of the trial court's ruling.

**3.** We note that Crim.P. 35 has since been amended, effective November 13, 1979. *See* Crim.P. 35(c) (1980 Supp.).

ison of his conduct and that of the prosecution. *See People v. Jamerson*, 198 Colo. 92, 596 P.2d 764 (1979).

■ As we have repeatedly emphasized, a defendant's speedy trial rights under *U.S. Const.* Amend. VI and *Colo.Const.* Art. II, sec. 16, are to be measured by an *ad hoc* balancing of four factors: the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. *Gelfand v. People*, 196 Colo. 487, 586 P.2d 1331 (1978); *People v. Buggs*, 186 Colo. 13, 525 P.2d 421 (1974); *People v. Spencer*, 182 Colo. 189, 512 P.2d 260 (1973); *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

> "None of these four factors is indispensable to a finding that speedy trial has been denied. Nor is any one of them *ipso facto* sufficient to require such a finding. Rather all are interrelated and must be considered together with any other relevant circumstances." *Gelfand v. People, supra*, 196 Colo. at 489–90, 586 P.2d at 1332; *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Barker v. Wingo, supra.*

■ In a weighing of these factors, the defendant has the burden of proving that his constitutional speedy trial right has been denied. *Gelfand v. People, supra; Jaramillo v. District Court*, 174 Colo. 561, 484 P.2d 1219 (1971); *Ziatz v. People*, 171 Colo. 58, 465 P.2d 406 (1970). Courts that engage in this "difficult and sensitive balancing process" [*Barker v. Wingo, supra*, 407 U.S. at 533, 92 S.Ct. at 2193] are painfully aware that the idea of a "speedy trial" is "slippery" to grasp [*Id.* at 522, 92 S.Ct. at 2188] and that, as a constitutional right, it is "a more vague concept than other procedural rights." [*Id.* at 521, 92 S.Ct. at 2187]. However, the "essential ingredient" of this constitutional requirement is that the defendant and society have a mutual right to expect the "orderly expedition" of criminal charges—not mere speed. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). *See Barker v. Wingo, supra.*

### Length of Delay

The length of delay before trial, during which a defendant stands accused of criminal charges, is to some extent a triggering mechanism to the whole balancing process. Unless the delay is at least presumptively prejudicial to the defendant, no extended inquiry need be made into the other factors which complete the test. The length of delay in this case may be approximately determined as either 12 months (the cumulative periods during which the defendant was formally accused of criminal charges) or 49 months (the total period between initial charge and eventual trial).[4] The computation of the length of delay, under the approach adopted in *Barker v. Wingo, supra*, is not subject to specific limitations or exclusions, such as the fixed-time periods established by statute or rule. *See* section 18–1–405, C.R.S.1973 (1978 Repl. Vol. 8); Crim.P. 48(b). *See also* Erickson, *The Right to a Speedy Trial*, 10 *Houston L.Rev.* 237 (1973); ABA Standards for Criminal Justice 12–2.1 (2d ed. 1980).

We here consider the entire forty-nine-month period of time between the initial indictment and the defendant's actual trial as the "length of delay" during which he was entitled to a speedy trial. *State v. Black*, 587 S.W.2d 865 (Mo.Ct.App.1979). *See United States v. Santos*, 588 F.2d 1300 (9th Cir. 1979).

### Reasons for Delay

■ A *nolle prosequi* order is not the final disposition of a criminal case, but leaves the matter in the same condition as before the charges were filed. *Lawson v. People*, 63 Colo. 270, 165 P. 771 (1917).

---

4. Jurisdictions are split in how they determine the total amount of pretrial delay in cases where there is a period of time between dismissal of initial charges and the refiling of later charges. *Compare, e. g., United States v. Merrick*, 464 F.2d 1087 (10th Cir. 1972), *with United States v. Davis*, 487 F.2d 112 (5th Cir. 1973).

Thus, in this case the original indictment against the defendant became a nullity upon its dismissal without prejudice. *Id.; People v. Dunhill*, 40 Colo.App. 137, 570 P.2d 1097 (1977). *See* Annot., 30 A.L.R.2d 462 (1953). *Cf. Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (the unusual "nolle prosequi with leave" procedure cannot be used to deprive a defendant of a speedy trial).

■ , The dismissal of charges was here sought to allow further investigation of the underlying crime and to avoid putting the defendant in criminal jeopardy on evidence of uncertain credibility. The *nolle prosequi* motion was, in other words, in keeping with the prosecutor's duty to seek justice. *See People v. Elliston*, 181 Colo. 118, 508 P.2d 379 (1973). *See also* ABA Standards for Criminal Justice 3–1.1(b) and (c) (2d ed. 1980).[5] A prosecutor has the discretion to seek the dismissal of charges, pending further investigation of a case, even if a defendant may be somewhat prejudiced as a result. *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978).

■ Where delay is the product of a valid investigative or prosecutorial purpose, it is not chargeable against the government. *Schiffner v. People*, 173 Colo. 123, 476 P.2d 756 (1970); *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976). In this case a witness was found by police in early February 1977 who stated that the defendant had been bragging about his participation in the Reinert homicide. Immediately, investigators arranged to interview Michael Price, who had previously been listed as one of the defendant's alibi witnesses before his scheduled trial in 1974. Price implicated the defendant and corroborated Freddie Young's version of events. Young was in-

terviewed again, and he stood by his prior account. Young had already been convicted for his role in the killing and, thus, was no longer subject to further criminal jeopardy for whatever testimony he might give about the crime. *People v. Young, supra.* Consequently, when subsequent charges were brought against the defendant, new evidence had been obtained, and Young's eyewitness version of what happened was able to be corroborated by the defendant's own admissions.

Under these circumstances, the reinstitution of identical criminal charges against the defendant did not violate relevant speedy trial principles.[6] *See Schiffner v. People, supra; People v. Dunhill, supra; People v. Wilkinson*, 37 Colo.App. 531, 555 P.2d 1167 (1976). *See also* ABA Standards for Criminal Justice 12–2.3(f). *Cf. Amon v. People*, 198 Colo. 172, 597 P.2d 569 (1979).

*Assertion of the Right*

■ A criminal defendant has no duty to bring himself to trial; but he does have a responsibility to assert his right to a *speedy* trial. *Barker v. Wingo, supra.*

■ The record discloses that the defendant did not assert his speedy trial claim until September 22, 1977, approximately one month before his trial. There is no indication that he contested the prosecution's motion for *nolle prosequi* in 1974, or that he sought to have the case dismissed with prejudice on speedy trial principles in 1974, or that he asserted his right when it was again dismissed for prosecutorial misconduct before the grand jury on August 12, 1977.

"[T]he record strongly suggests that while he hoped to take advantage of the second indictment against the defendant on August 12, 1977. But charges were then refiled by information within a week. No damage to the defense or other negative consequence is alleged as a result of the faulty indictment, and the minimal resulting delay in processing the case must be seen in relation to other pretrial delays caused by the defendant's lack of cooperation in discovery and his request for at least one continuance.

**5.** ABA Standard 3–1.1 provides in part as follows:

"(b) The prosecutor is both an administrator of justice and an advocate. The prosecutor must exercise sound discretion in the performance of his or her functions.
(c) The duty of the prosecutor is to seek justice, not merely to convict."

**6.** Prosecutorial misconduct before the grand jury caused a dismissal without prejudice of

delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Barker v. Wingo, supra,* 407 U.S. at 535, 92 S.Ct. at 2194. *Cf. United States v. MacDonald,* 632 F.2d 258 (4th Cir. 1980).

A defendant's delay in asserting his right to a speedy trial is a significant factor to weigh in determining whether he was denied his constitutional right to a speedy trial.

### Prejudice to the Defendant

When the defendant was scheduled to be tried on January 14, 1974, he claims he was prepared to establish an alibi defense. But when he was tried on October 24, 1977, he did not even attempt to present an alibi. He argues that prosecutorial delay made it impossible for him to reconstruct the testimony he needed to show that he was not with Freddie Young when the victim was shot on the evening of August 31, 1973. As defense counsel put it in testifying at the Rule 35(b) hearing:

> "We had a number of problems with witnesses being gone, deceased, lacking in memory, or some of the alibi witnesses who had been convicted of offenses that made them not useful from the defense standpoint."

No testimony from any of the alleged alibi witnesses who were available to testify was offered at either the trial or at the Rule 35(b) hearing. No continuances were sought to locate the one missing witness whose testimony was arguably necessary. The key witness who was unavailable to testify at either proceeding was Ricky Lewis, the defendant's deceased half brother. Defense counsel described Lewis' role in the alibi as "very important" because, before his death, he was ready to testify that he had been with the defendant at all the crucial times on the evening in question. The other alibi witnesses would have testified that they had seen the defendant from time to time, but Lewis was needed to tie their testimony together.

At his Rule 35(b) hearing, the defendant claimed that the period of time between dismissal of the first indictment and the filing of the second indictment provided the occasion for testimony or other evidence to be lost and thus served as the "but/for" cause of prejudice to the defendant's case.

However, our overall balancing process does not end with a showing of prejudice. The quality of the defendant's alibi and the extent of its impairment are also important factors to be considered. *See People v. Reliford,* 186 Colo. 6, 525 P.2d 467 (1974).

Defense counsel admitted that Ricky Lewis, if called to testify on his brother's behalf, would have made an extremely poor witness. Further, at trial the defendant made no effort to introduce any of the supposedly exculpatory evidence that still remained available to him. *Cf. United States v. MacDonald,* 632 F.2d 258 (4th Cir. 1980). The only testimony from any potential parties to the alibi came from prosecution witnesses, who gave no support at all to the alibi's validity. Although all potential alibi witnesses had provided statements to defense investigators in preparation for the 1974 trial, none of them, other than prosecution witnesses, were called at trial or at the 35(b) hearing. It is undisputed that several defense witnesses were available to have their memories refreshed as part of giving sworn testimony.

While the defendant suffered some prejudice at trial from his inability to offer Lewis as a witness to counter the prosecution's evidence that the defendant had participated in a conspiracy with his brother to fabricate an alibi, nevertheless, looking at all factors in the circumstances of this case, we find that any prejudice which the defendant suffered is outweighed by the reasons which justified the entering of a *nolle prosequi* order and by the defendant's own apparent lack of desire to press for the orderly expedition of his case prior to September 22, 1977. We conclude that he was not deprived of his constitutional right to a speedy trial.

### C.

Defendant argues that the total period of time which passed from the occurrence of

the homicide on August 31, 1973, and his eventual trial on October 24, 1977, violates fundamental fairness guaranteed to him by the due process clauses of *U.S.Const.* Amend. XIV and *Colo.Const.* Art. II, sec. 25.

As the United States Supreme Court has made clear, however, due process has a limited constitutional role to play in protecting a defendant against oppressive preindictment delay. *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion, supra.* Here, the defendant was not subject to an indictment or information or to the restraints imposed by arrest after his original indictment was dismissed and during the three years before he was again charged. Due process, under such circumstances, "does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *United States v. Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. at 2049.

▮ When the government takes time before seeking an indictment for purposes of conducting further criminal investigation, fundamental fairness is not violated unless this procedure shocks "the community's sense of fair play and decency." *Id.* at 790, 97 S.Ct. at 2049; *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). Due process is implicated, indeed, if defense witnesses become unavailable prior to commencement of formal proceedings. *See People ex rel. Coca v. District Court,* 187 Colo. 280, 530 P.2d 958 (1975). However, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco, supra,* 431 U.S. at 796, 97 S.Ct. at 2052.

▮ Actual prejudice to the defendant resulting from preindictment delay is not enough *per se* to establish the need for dismissal on due process grounds. *Id.; United States v. Marion, supra; United States v. Mays,* 549 F.2d 670 (9th Cir. 1977). Intentional or negligent misconduct on the government's part must also be shown. *Id.* The trial court found, and we agree, that the prosecution's investigative delay was reasonable under the circumstances of this case.

The defendant's reliance on *People v. Abrahamsen,* 176 Colo. 52, 489 P.2d 206 (1971), is misplaced. In *Abrahamsen* the district attorney sought to circumvent the speedy trial limitation imposed by rule in seeking to reinstate charges against the defendant which had already been dismissed twice, the second time with prejudice. In this present case, the trial court granted the district attorney's motion of *nolle prosequi* with the understanding that charges would be refiled. *People v. Reliford, supra.* The trial court's dismissal of the second indictment was also without prejudice. The good faith of the prosecutor in filing a direct information is not in question. *See id.*

We, therefore, affirm the trial court's dismissal of the defendant's motion seeking an acquittal on the basis that his due process rights under the federal and Colorado constitutions were violated.

## II.

### Case No. 79SA166

The defendant alleges that a variety of errors were committed in his trial which require our reversal of his conviction. We disagree.

### A.

During defense counsel's cross-examination of Michael Price, he sought to impeach the witness' testimony with prior inconsistent statements he had given a defense investigator in preparation for the trial scheduled to begin on January 14, 1974. All these statements were made by Price on October 8, 1973, and were contained in an investigator's interview report. Defense counsel sought to admit only those statements which directly contradicted Price's relation of events at trial.

In response to the prosecution's request for discovery of the whole report, the trial

court advised defense counsel that his use of Price's recorded statements in cross-examination for impeachment purposes would constitute a waiver of relevant evidentiary privileges against disclosing the report as a whole. Defense counsel made clear that he intended to make use of selected portions of the report during his cross-examination, and as a consequence, the court ordered production of the entire report for examination and use by the prosecution.

During the witness' redirect examination, he was questioned about other statements in the report which were not used for impeachment by defense counsel. When the defense objected to this procedure, the court ruled that the prosecution had a right to rehabilitate its witness by presenting prior consistent statements and by developing the context in which Price's prior inconsistent statements were made.

The witness had no specific recall of what he had told the defense investigator. Both prosecution and defense read extensively from the report, and the witness admitted making the statements read into evidence. The written report was not itself entered into evidence for the jury's inspection.

Defendant argues here that the trial court's rulings deprived him of constitutional rights under *U.S.Const.* Amend V, VI, and XIV, and violated the attorney's work product doctrine, which generally serves to bar discovery of documents prepared in anticipation of litigation or for trial. *See A v. District Court*, 191 Colo. 10, 550 P.2d 315 (1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). We disagree and find no constitutional basis for withholding production of the defense investigator's report.

▮▮▮ Initially, we note that the report did not contain any statements made by the defendant. His Fifth Amendment privilege against compulsory self-incrimination is personal in nature and does not automatically serve to bar discovery of all information that may tend to incriminate him. *See People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975). The witness whose prior statements are at issue was available to be examined by both the prosecution and the defense. Therefore, in no relevant Fifth Amendment sense was the defendant compelled to be a witness against himself, nor were communications extorted from him. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

Likewise, the defendant's Sixth Amendment right to cross-examine the prosecution's witness was not abridged. By ruling that production of the investigator's report was proper, the trial court "merely prevented [the defendant] from presenting to the jury a partial view of the credibility issue . . . ." *United States v. Nobles, supra*, 422 U.S. at 241, 95 S.Ct. at 2171. It is within a trial court's discretion to assure that a jury's fact-finding not be limited to a truncated version of an investigator's evidence favorable to the defendant alone. *Id.*

"The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Id.*

The defendant's due process rights were not violated by the production of the report. "Trial by ambush, or the old fox-and-hounds approach to litigation, does not promote accuracy or efficiency in the search for truth." *People v. District Court, supra*, 187 Colo. at 337, 531 P.2d at 628. *See Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979). Criminal discovery is not a one-way street flowing in the direction of the defense. *United States v. Nobles, supra.* See Crim.P. 16(II).

"We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts." *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

The work product doctrine recognized in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), acknowledges the existence of an important, but qualified evidentiary privilege. *See United States v. Nobles, supra; People v. District Court, supra.* In contrast to the attorney-client privilege, which protects communications between a client and his attorney or the attorney's agent [*A v. District Court, supra; Bellmann v. District Court,* 187 Colo. 350, 531 P.2d 632 (1975)], the work product doctrine protects against the disclosure of specific documents and tangible items prepared in actual anticipation of litigation or for trial. *A v. District Court, supra. See* Annot., 35 A.L.R.3d 412 (1971). The exemption from discovery is intended to insure the privacy of a party's attorney from unnecessary intrusion by opposing parties and counsel. *Id.; Hickman v. Taylor, supra.* But this "privilege" is not absolute; it is not personal to the client; and it can be waived by an attorney's course of conduct.

The defense sought to impeach Price's testimony by developing evidence of inconsistencies between what he was saying at trial and what he had told various people in anticipation of the defendant's 1974 trial. Defense counsel's cross-examination suggested that Price was contriving his present testimony in order to receive favorable treatment from government officials. The defense investigator's report of October 8, 1973, was used to contrast specific statements Price had made at that time to those he now made. The defense counsel read selected portions of the investigator's report in the presence of the jury, using the exact language of the report. He obtained the witness' admission that, indeed, he had made such statements. The attorney's work product thus became substantive evidence in the case. *See* section 16–10–201, C.R.S. 1973 (1978 Repl. Vol. 8). By electing to present impeachment evidence in this manner, the defense waived the work product privilege with respect to matters covered in the investigator's report. *United States v. Nobles, supra. See People v. Thompson,* 187 Colo. 252, 529 P.2d 1314 (1975).

The prosecution, in the absence of a work product privilege, was clearly entitled to rehabilitate its witness by questioning him about prior consistent statements relating to the same subject matter as the prior inconsistent statements. *See McCormick, Handbook of the Law of Evidence* § 49 (2d ed. 1972). Without obtaining a copy of the defense investigator's report, the prosecution would have been totally barred from rebutting the defense's impeachment use of the report on cross-examination. The relevant context of the witness' prior statement to the investigator was admissible in order for the jury to reach a fair conclusion about the witness' general credibility and his motives in testifying at trial. See 2 *Wharton's Criminal Evidence* § 494 (13th ed. 1972); *Worthington v. State,* 38 Md.App. 487, 381 A.2d 712 (1978). See also CRE 801(d)(1)(B).

### B.

In addition to Price's evidence, the prosecution offered two other witnesses, Joyce Young and Rebecca Martin, to corroborate Freddie Young's testimony. These witnesses based their testimony on his statements and conduct in the days following the event and upon their own conduct in trying to assist him.[7]

Both of them were impeached on cross-examination by suggestions that their testimony was motivated by a desire to benefit Freddie Young by obtaining favorable treatment for him from authorities. They

---

7. Joyce Young is Freddie Young's wife. Rebecca Martin is the mother of four of Freddie Young's children. Both witnesses lived with him at the time of the criminal transaction at issue. Both testified at trial that Freddie Young implicated the defendant in the killing on the night of the event. Joyce Young cleaned blood out of the back seat of the vehicle where the victim was shot. Both women accompanied Freddie Young to talk to investigating police officers on September 10, 1973. Both gave statements to police at that time, and both were contacted again on February 4, 1977, during the subsequent investigation of the case. Their versions of what Young said and what he and they did after the killing are substantially the same.

were asked by defense counsel if on September 10, 1973, or on February 4, 1977, they had said to detectives that they would testify if it would "help" Freddie or if Freddie "would get something out of it." Joyce Young could not remember saying this; Martin denied saying so but could not remember if Joyce Young had. The obvious implication of their cross-examination was that they had concocted a story with Freddie Young to incriminate the defendant.

The prosecution called a detective, Edmond Lans, who had interviewed Joyce Young and Rebecca Martin on September 10, 1973, to corroborate that their trial testimony was similar to their prior statements to the police on that date and that their statements were consistent with their testimony at trial. Defense counsel objected on the general grounds that the evidence was not "competent testimony." The prosecution argued that Lans was called to rebut the implication that the witnesses' testimony was a result of promises made to Freddie Young, and the trial court admitted Lans' testimony. Lans' version of events concerning what the witnesses said tended to negate the inference that Joyce Young and Martin had traded cooperation with investigators for official promises to help Freddie Young.

The defendant argues here that these two witnesses had not been directly impeached with inconsistent statements and, therefore, that the court erred in allowing Lans to testify about their prior consistent statements. We do not find error.

The witnesses were impeached by evidence of bias and by the insinuation that they had recently contrived their testimony in order to lighten Young's sentence and that they had done so in 1973 in order for him to escape criminal liability altogether. The basic aim of all credibility rules is "to admit evidence which better enables the trier of fact on the basis of his experience to determine whether it is reasonable to conclude that the witness is lying or telling the truth." 3 *Weinstein's Evidence* ¶ 607[02] at 607–15 (1980). *See id.* ¶ 607[08].

Evidence of a witness' prior consistent statements has generally been admitted where the witness has been impeached with evidence that his or her testimony at trial was dependent upon a "discrediting influence" which did not arise until after the prior statement had been made [4 *Wigmore, Evidence* § 1128 at 268 (Chadbourn rev. 1972)] or where it is claimed that the witness' testimony was a "recent fabrication." 2 *Wharton's Criminal Evidence* § 500 at 492 (13th ed. 1972). *See* 3 *Weinstein's Evidence* ¶ 607[08] (1980). The implication that the witnesses' testimony was offered in exchange for governmental concessions to Freddie Young was a sufficient attack on their credibility to warrant the trial court's conclusion, in the exercise of its discretion, that prior consistent statements were admissible to support their credibility. *State v. Kane,* 9 N.J.Super. 254, 75 A.2d 894 (1950).[8]

### C.

The defendant argues here that the trial court erred in admitting the testimony of a prosecution witness, Manette Young, that Ricky Lewis had threatened her to say that she saw the defendant at a party on the evening of the Reinert homicide. Two objections are raised against the trial court's evidentiary ruling: (1) that the co-conspirator exception to the hearsay rule, under which the testimony was admitted, is inapplicable where the conspirator, whose statement is offered, was not a party to the substantive offense charged and (2) that insufficient independent evidence was presented to establish the existence of a conspiracy to fabricate an alibi. We affirm the trial court's ruling.

Michael Price had testified that on the night of the killing, and at least once afterwards, the defendant admitted he shot the victim during the course of an armed robbery. Price explained that the day after the killing he and the defendant met in

---

8. The defense did not request a cautionary instruction on the use of Lans' testimony for the prosecution, and we do not address this issue here.

order to establish a false alibi. According to Price, the defendant claimed that he had the cooperation of quite a few people in this attempt, including Ricky Lewis. Price said he saw the defendant and Lewis meeting together and that the defendant said Lewis was going to talk to another person to "key him in on the alibi." The gist of the "alibi" was that the defendant had been playing basketball on the afternoon of the killing, that he discussed going to a party that evening with his friends, and that he was seen in attendance at a party that night. Thus, his location on that day would always be roughly accounted for.

Outside the presence of the jury, the trial court ruled that, although the charged crime had been completed before the alleged conspiracy was formed, sufficient independent evidence was offered by the prosecution to show the existence of a separate conspiracy to fabricate an alibi. Manette Young was able to connect Lewis to this conspiracy by testimony that a "couple days" after she went to a party on August 31, 1973, Lewis tried to coerce her to say she saw the defendant at the party even though she told Lewis she had not seen him there. This evidence was offered as being relevant to the substantive charge against the defendant.

▓▓▓▓ Statements by joint participants in a conspiracy are admissible against all its members if made in furtherance of and during the course of the illicit relationship. A joint participant is considered as a co-conspirator even where no conspiracy has been charged. *United States v. Nixon, supra; United States v. Spencer*, 415 F.2d 1301 (7th Cir. 1969). As long as Lewis' statement was relevant to material issues in the case, it was admissible against the defendant (1) if the existence of a conspiracy involving the defendant was shown by evidence independent of Manette Young's testimony and (2) if Lewis' involvement in the conspiracy was shown by independent evidence. *People v. Braly*, 187 Colo. 324, 532 P.2d 325 (1975); *People v. Schlepp*, 184 Colo. 28, 518 P.2d 824 (1974); *Smaldone v. People*, 103 Colo. 498, 88 P.2d 103 (1939); *People v. Orr*,

39 Colo.App. 289, 566 P.2d 1361 (1977); *People v. Akins*, 36 Colo.App. 337, 541 P.2d 338 (1975). *See* Annot., 46 A.L.R.3d 1148 (1972). *See also* C.R.E. 801(d)(2)(E).

Here, Price's testimony independently showed that conspiratorial acts were being taken to fabricate an alibi and that Lewis was a co-conspirator. Lewis' statements were offered as being made during the course and in furtherance of the conspiracy which included Price and the defendant. Proof of the existence of this conspiracy corroborated Price's admission that he had consciously misled investigators prior to the defendant's first scheduled trial. The prosecution made a sufficient showing that the agreement to conceal the defendant's participation in the substantive offense was in existence at the time Lewis talked to Manette Young. *Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978); *People v. Orr, supra*. *See Smaldone v. People, supra*. There was sufficient independent evidence of the conspiracy to allow the jury to consider it in weighing the disputed credibility of Price's testimony implicating the defendant. Therefore, the trial court did not err in admitting Manette Young's testimony.

### D.

Other errors in admission of evidence that are alleged in this appeal either were not objected to at trial or were not preserved in defendant's motion for new trial. Whatever the technical merit of defendant's arguments, we hold that the trial court committed no plain error within the terms of Crim.P. 52(b).

▓▓▓▓ The defendant also argues that the trial court erred in refusing to instruct the jury that they should view the testimony of an accomplice with caution. *See Colo. J.I. (Crim.) 4:11*. But the law is clear that such an instruction is needed only where the accomplice's testimony has been uncorroborated. *People v. Jones*, 191 Colo. 110, 551 P.2d 706 (1976); *People v. Martinez*, 187 Colo. 413, 531 P.2d 964 (1975). The defendant was not entitled to the instruction here.

The judgment is affirmed.

ERICKSON, J., does not participate.