**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Richard VELASQUEZ,**
**Defendant-Appellant.**

**No. 80SA517.**

Supreme Court of Colorado,
En Banc.

Feb. 16, 1982.
Rehearing Denied March 15, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jeffrey A. Springer, Denver, for defendant-appellant.

Richard Velasquez, pro se.

QUINN, Justice.

 The defendant, Richard Velasquez, was convicted by a jury of four counts charging him with dispensing a dangerous drug, cannabis;[1] possession of narcotic drugs, namely morphine and codeine;[2] possession of more than one ounce of cannabis;[3] and carrying a concealed weapon.[4] His challenges on this appeal are several and include the claimed unconstitutionality of consensual electronic surveillance under Article II, Section 7, of the Colorado Constitution, the asserted illegality of his arrest and search incident thereto as well as a subsequent search of his automobile, the alleged violation of his statutory and constitutional rights to speedy trial, and a claim that he was denied effective assistance of counsel.[5] We affirm the judgment.

1. Sections 12-22-404(1)(a) and 12-22-412(1), C.R.S.1973 (1978 Repl. Vol. 5).

2. Sections 12-22-302 and 12-22-322, C.R.S. 1973 (1978 Repl. Vol. 5).

3. Sections 12-22-404(1) and 12-22-412(6) and (12)(d), C.R.S.1973 (1978 Repl. Vol. 5).

4. Section 18-12-105(1), C.R.S.1973 (1978 Repl. Vol. 8).

5. The defendant raises several other issues which we summarily dispose of here. First, the defendant raises an issue concerning his bail. Bail was originally set at $5,000 but was increased to $25,000 by the trial court shortly after a preliminary hearing. The proper method of contesting the reasonableness of bail is by an original proceeding to this court, *Balltrip v. People*, 157 Colo. 108, 401 P.2d 259 (1965), or by a petition pursuant to section 16-4-204(1), C.R.S.1973 (1978 Repl. Vol. 8) and Crim.P. 46(c)(1) to review a bail increase. The defendant sought no such relief in this case and the issue of preconviction bail is therefore moot.

## I.

The charges against the defendant arose from a drug transaction which occurred in Montrose County, Colorado, on December 22, 1978. Earlier that month, while working with the Colorado Bureau of Investigation as an informant, James Walsh met the defendant and purchased marijuana from him on three or four occasions prior to the events here at issue. On December 21 the defendant agreed to sell Walsh one pound of "sesamian marijuana" for $1300. The sale was scheduled for the next day at Walsh's room in the Will Rogers Motel in Montrose County. Walsh contacted Detective Sellers of the Montrose Police Department and received $1300 in recorded bills to make the purchase. During the morning hours of December 22 Detective Sellers and Agent Konkel of the Colorado Bureau of Investigation (CBI) placed an audio transmitter, with Walsh's consent, behind the headboard of the bed in his room. After Sellers and Konkel had stationed themselves in a car outside the motel, they saw the defendant arrive at about 1:00 p.m. in a Chevrolet automobile which he parked in the motel parking lot. The defendant then entered Walsh's room.

The defendant also claims that the search of his residence pursuant to warrant was illegal. The district attorney stated at a suppression hearing that no items seized from the defendant's home would be introduced at trial. The defendant acceded to this statement and made no request to suppress the fruits of the house search. At trial the prosecution did not offer into evidence anything obtained from the house search. Although the issue relating to the house search would appear to be moot, we have nonetheless reviewed the affidavit filed in connection with the application to search the defendant's home and are satisfied that there was probable cause for the issuance of the warrant.

The defendant also seeks resentencing under the 1979 version of H.B. 1589. The offenses charged in this case were committed prior to July 1, 1979, the effective date of H.B. 1589. Colo. Sess. Laws 1979, ch. 157, sec. 25 at 672. Due to the many times we have held that H.B. 1589 is not retroactive in its application, we reject the defendant's contention without further discussion. *E.g., People v. Francis*, Colo., 630 P.2d 82, n. 1 (1981).

The officers monitored the ensuing conversation between the defendant and Walsh. When the defendant arrived he told Walsh that he had no "sesamian pot" but he had brought two pounds of Colombian marijuana with him and, if Walsh purchased this marijuana, the defendant then would have enough money to purchase the "sesamian marijuana" for a later sale to Walsh. Walsh agreed to the purchase of the Colombian marijuana for $750. The officers saw the defendant leave the motel room and go to his car, where he removed a box and brown bag from the trunk, and then return to the room. Once back inside the room, the defendant weighed two bags of marijuana and Walsh paid him $750. After Walsh gave a prearranged signal by stating "this would make a nice Christmas present", the officers entered the room and arrested the defendant.

The officers recovered a .38 caliber loaded revolver from the defendant and a large sum of money, including the recorded money paid by Walsh. Seized from a coffee table in the room were a scale and a pound bag of marijuana. Another pound of marijuana was located in a paper sack on the floor. Immediately after the defendant's arrest the officers arranged for the towing of his automobile from the motel parking lot to a garage where the automobile was sealed. Later a warrant was issued for the search of the vehicle, based upon an affidavit of Detective Sellers reciting what Sellers and Agent Konkel heard and saw during the electronic surveillance and their arrest of the defendant and recovery of contraband in the motel room. Upon execution of the warrant a sawed-off shotgun, some small bags of marijuana and a trace of a black substance later determined to contain morphine and codeine were recovered from the defendant's vehicle.

A complaint was filed against the defendant in county court on January 3, 1979, and after a preliminary hearing the matter was bound over to the district court. The defendant initially appeared in the district court with a deputy public defender on March 8, 1979 for arraignment. Defense counsel requested 30 days to file motions directed to the information prior to the entry of a plea. The court granted this motion but reserved September 17, 1979, for trial of the case. The trial date was selected after defense counsel acknowledged on the record that the six month speedy trial period would not begin to run until the arraignment and after he had rejected an earlier date due to a prearranged vacation.

Several days after the March 8 appearance the court ordered $1,920 in unmarked money previously seized from the defendant returned to him and granted him 30 days to retain private counsel. During the next three months the court granted several requests by the defendant for additional time to retain private counsel and to file motions. Ultimately the defendant retained a private attorney, who formally entered his appearance on July 23, 1979. This attorney filed various motions, including a motion to suppress various articles seized from the defendant, the motel room and the defendant's vehicle.

A hearing was held on the motion to suppress on August 27, 1979. The court denied the motion to suppress, ruling that Article II, Section 7 of the Colorado Constitution did not require a warrant to electronically monitor a conversation when one of the participants had consented to the monitoring, that the officers had probable cause and legal authority to arrest the defendant and search his person incident to the arrest, that the seizure of the defendant's vehicle was proper, and that the affidavit in support of the warrant to search the vehicle established probable cause. The case was continued for trial commencing on September 17, 1979.

Although neither the defendant nor his attorneys ever sought to enter a not guilty plea subsequent to March 8, 1979, the defendant appeared with private counsel on the trial date and moved for dismissal of the charges on the basis that his right to a speedy trial had been violated. The court denied the motion to dismiss and, upon the defendant's refusal to enter a plea to the charges, entered a not guilty plea on his

behalf pursuant to Crim.P. 11(d) and the trial commenced.

At trial, no recording or transcript of the monitored conversation between the defendant and Walsh was offered into evidence but Detective Sellers and Agent Konkel testified to the substance of what they had overheard while monitoring the conversation. The court admitted into evidence the marijuana, drug paraphernalia, recorded money and revolver seized during the course of the defendant's arrest as well as the other drugs and shotgun recovered from the defendant's vehicle. The jury found the defendant guilty of the felonies of dispensing a dangerous drug and possession of a narcotic drug, and guilty of the misdemeanors of possession and use of more than one ounce of cannabis and carrying a concealed weapon. Subsequently the defendant was sentenced on the felony convictions to concurrent terms of six to ten years and to concurrent terms of one year on the misdemeanor convictions. This appeal followed.

### II.

The defendant argues that the state constitutional prohibition against unreasonable searches and seizures, *Colo.Const.* Art. II, Sec. 7,[6] should be construed to require a warrant for the electronic transmission and monitoring of a defendant's conversations with another, in spite of the other party's consent to the electronic surveillance. The

---

**6.** Article II, Section 7, of the Colorado Constitution provides:

 "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing."

**7.** As a preliminary matter the defendant urges that *White* is inapplicable to this case because it was based in part on the non-retroactivity of *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and, therefore, the post-*Katz* participant monitoring in this case is subject to the strictures of *Katz.* Subsequent to the *White* decision, however, the Supreme

defendant concedes that under *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), no warrant is required for consensual electronic surveillance under federal constitutional standards. He urges us, however, not to follow *White* because its reasoning conflicts with realistic expectations of privacy.[7] We are not persuaded by his argument.

In *White* the United States Supreme Court reasoned that the use by government agents of electronic equipment to transmit and monitor the defendant's conversations with an informer, without a search warrant but with the informer's knowledge and consent, did not violate the Fourth Amendment to the United States Constitution:

 "Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights.... For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person ... (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequen-

---

Court has made clear that *White*'s rationale does apply to post-*Katz* consensual electronic surveillance. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (violation of IRS regulation prohibiting electronic monitoring without advance authorization from Attorney General does not raise "any constitutional questions"). Besides, as *White* pointed out,

 "*Katz* involved no revelation to the Government by a party to conversations with the defendant nor did the Court indicate in any way that a defendant has a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police." 401 U.S. at 749, 91 S.Ct. at 1124–25, 28 L.Ed.2d at 457.

cy. . . . If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." 401 U.S. at 751, 91 S.Ct. at 1125, 28 L.Ed.2d at 458.

■ The protections of Article II, Section 7, of the Colorado Constitution, like its federal counterpart, are limited by reasonable expectations of privacy—that is, expectations which the law is prepared to recognize as legitimate. *See People v. Gomez*, Colo., 632 P.2d 586 (1981); *People v. Becker*, 188 Colo. 160, 533 P.2d 494 (1975). In determining the measure of constitutional protection under the warrant requirement of the Colorado Constitution, the proper inquiry is not whether an individual defendant subjectively expected his ostensible accomplice in crime to preserve the confidentiality of their encounter and conversation. Rather, the proper inquiry is whether the defendant's expectation of confidentiality was constitutionally justified. Certainly, when a defendant meets with a police informant, whose role as such is concealed, in the informant's motel room for the purpose of selling him illegal drugs, such defendant has no legitimate expectation that his encounter

and conversation with the informant may not later be used as evidence against him. If the law affords the defendant no legitimate expectation of privacy under these circumstances, neither should it protect him when the same informant permits the electronic recording and transmission of the same conversation taking place in the informant's room.

We recognize that *United States v. White, supra,* a plurality opinion, has not met with universal acceptance by state courts in determining the propriety of consensual electronic surveillance under state constitutional provisions.[8] However, we have relied upon *White* in several cases involving suppression issues. For example, in *People v. Morton,* 189 Colo. 198, 539 P.2d 1255 (1975), *cert. denied* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976), we held that the warrantless electronic recording by a private investigator, working with the police, of the defendant's conversation with the investigator in the latter's automobile did not violate the defendant's Fourth Amendment rights, nor did the recording constitute an "unlawful interception" entitling the defendant to suppression under section 16–15–101 *et seq.,* C.R.S.1973 (1978 Repl. Vol. 8), which deals with wiretapping and eavesdropping. Again relying on *White,* we held in *People v. Edmonds,* 195 Colo. 358, 578 P.2d 655 (1978), that a defendant who connected his own telephone

---

8. Some of the state decisions following *White* involved challenges to consensual electronic surveillance under a state constitutional prohibition of unreasonable searches and seizures, *e.g., Hammond v. State,* 354 So.2d 280 (Ala. Crim.App.1977); *State v. Boone,* 581 P.2d 571 (Utah 1978), while others dealt with challenges under a specific privacy guarantee under the state constitution, *e.g., Franco v. State,* 376 So.2d 1168 (Fla.App.1979) (specific Florida constitutional prohibition of unreasonable interception of private communications by any means); *People v. Mosley,* 63 Ill.App.3d 437, 20 Ill.Dec. 172, 379 N.E.2d 1240 (1978) (specific Illinois constitutional prohibition of interception of communications by eavesdropping devices or other means). Most courts which have departed from *White* have done so on the basis of a provision in the state constitution specifically guaranteeing a right of privacy. *See, e.g., State v. Glass,* 583 P.2d 872 (Alaska 1978) (con-

stitutional amendment to Alaska Constitution providing that right of privacy shall not be infringed and also state constitutional prohibition of unreasonable searches and seizures); *White v. Davis,* 13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 (1975) (right of privacy amendment to California constitution); *Tollett v. State,* 272 So.2d 490 (Fla.1973) (Florida constitutional prohibition of unreasonable interception of private communications by any means); *State v. Brackman,* 178 Mont. 105, 582 P.2d 1216 (1978) (Montana constitutional provision stating that the right of privacy "shall not be infringed without the showing of a compelling state interest"). In *People v. Beavers,* 393 Mich. 554, 227 N.W.2d 511 (1975), which involved participant electronic monitoring in the defendant's home, the Michigan Supreme Court declined to follow *White* in its interpretation of its state constitutional protection against unreasonable searches and seizures.

to his apartment manager's telephone line, to which the police thereafter connected a tape recorder with the manager's consent, did not have a "valid expectation of privacy while speaking on his extension of the manager's line." 195 Colo. at 365, 578 P.2d at 661.

■ Although neither *Morton* nor *Edmonds* involved a construction of our state constitutional guarantee against unreasonable searches and seizures, we see no reason to depart from *White*'s rationale in the context of the specific facts of this case. Accordingly, we hold that the warrantless electronic transmission and monitoring of conversations taking place between a suspect and a police informant in the informant's motel room, when the informant has previously consented to the electronic surveillance, does not violate Article II, Section 7, of the Colorado Constitution.

### III.

The defendant next argues that his arrest constituted an unreasonable seizure of his person under the United States and Colorado Constitutions because it was effected by a Montrose police officer outside the Montrose city limits, there was not probable cause for the arrest, and the arrest was made without a warrant. We reject these claims.

■ The record reflects that CBI Agent Konkel, who had statewide power of arrest, was both present and principally responsible for making the arrest. Also, it is undisputed that Detective Sellers, a Montrose city police officer, had been specially deputized as a county sheriff. These facts, by themselves, answer the defendant's claim with respect to the arrest powers of the officers who took him into custody. *People v. Schultz*, Colo., 611 P.2d 977 (1980); *see also People v. Wolf*, Colo., 635 P.2d 213 (1981).

■ Probable cause also existed for the defendant's arrest. In fact, during the suppression hearing the defendant with good reason conceded there was probable cause for his arrest. The arresting officers were both eye-witnesses and ear-witnesses to the criminal conduct of the defendant immediately prior to taking him into custody. *E.g., Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *People v. Chavez*, Colo., 632 P.2d 574 (1981); *People v. Johnson*, 199 Colo. 68, 605 P.2d 46 (1980).

■ The defendant's claim that his warrantless arrest was constitutionally infirm is similarly without merit. There is no constitutional requirement for an arrest warrant when, as here, the arrest is effected in the motel room of another during the perpetration of a crime. *See, e.g., United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *People v. Burns*, Colo., 615 P.2d 686 (1980).

### IV.

Next the defendant claims that the seizure of his automobile upon his arrest and the subsequent vehicular search pursuant to warrant violated the federal and state prohibitions against all unreasonable searches and seizures. We find no such constitutional violation in this case.

Due to its mobility, the opportunity to search an automobile is fleeting. If an effective search is to be made, either the vehicle must be immediately searched without a warrant or the car itself must be seized and held for whatever period is necessary to obtain a warrant.

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419, 428 (1970).

■ The location of the vehicle in a motel parking lot, rather than a public street, does not affect the legality of the initial seizure. As long as there was probable cause to search the vehicle, public access to the parking lot created a sufficient exigency to permit the immediate seizure of the

vehicle under the automobile exception to the warrant requirement. *See, e.g., Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Matthews,* 615 F.2d 1279 (10th Cir. 1980); *People v. Meyer,* Colo., 628 P.2d 103 (1981).

■ That probable cause existed to search the vehicle is evident from what the arresting officers saw and heard immediately prior to the arrest. In particular, the defendant's offer to sell two pounds of Colombian marijuana to Walsh, his exit from Walsh's motel room, his removal of a box and a brown paper bag from the trunk of his vehicle, his return to Walsh's motel room to complete the drug sale, and the seizure of the illegal drugs upon the defendant's ensuing arrest in the motel room, were first-hand observations which in their totality provided the officers with probable cause to believe that the defendant's vehicle contained illegal drugs. Thus, these facts justified the immediate seizure of the vehicle and, upon their incorporation in the affidavit, sufficiently established probable cause for the issuance of the search warrant.[9]

## V.

■ We next consider the defendant's claim that he was denied his statutory and constitutional rights to a speedy trial. Section 18–1–405(1), C.R.S.1973 (1978 Repl. Vol. 8) provides that if a defendant is not brought to trial "within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody . . . and . . . the pending charges shall be dismissed . . . ." *See also* Crim.P. 48(b)(1). If a defendant intends to seek the benefit of this six month period, it is incumbent upon him to enter a plea of not guilty so that the period of limitation may commence. *Saiz v. District Court,* 189 Colo. 555, 542 P.2d 1293 (1975). A review of this record demonstrates that at no time prior to trial did the defendant or his attorneys ever seek to enter a plea of not guilty and activate the statutory speedy trial period.

When the defendant appeared in court on March 8, 1979, for arraignment, the court acceded to his attorney's request to postpone the entry of a not guilty plea for 30 days in order to permit the filing of motions under Crim.P. 12(b). Defense counsel on this occasion expressly acknowledged on the record in the presence of the defendant that the six month speedy trial period would not begin to run until a plea of not guilty had been entered. After offering the defendant an earlier trial date in August 1979, which was rejected due to the defense attorney's vacation plans, the court reserved a trial date of September 17, 1979, with the understanding that the arraignment would take place in due course. However, in spite of several court appearances, neither the defendant, his public defender, nor his retained attorney ever sought arraignment during the course of the proceedings subsequent to March 8, 1979. Thus, when the defendant requested a dismissal of the case on September 17, 1979, the six month period had not yet begun to run. *Saiz v. District Court, supra; People v. Romero,* 196 Colo. 520, 587 P.2d 789 (1978).[10]

---

**9.** Although not raised before the trial court, the defendant for the first time asserts that the affidavit for the search warrant was technically insufficient because of the initial clause which stated: "Charles Sellers, an Investigator for the Montrose Police Dept. affiant, now appears before the undersigned ———————, authorized to issue warrants in criminal cases. . . ." The defendant argues that due to the blank lines appearing after the word "undersigned" the identity of the office of the person before whom the affiant appeared was not established by the affidavit. There is no merit to this argument. The affiant signed the affidavit and his signature was subscribed and sworn to before Richard J. Brown, who acknowledged the affiant's

signature by signing the affidavit and by expressly identifying his office as Judge of the Montrose County Court, Montrose, Colorado.

**10.** Furthermore, the period of delay in arraignment from March 8, 1979, to July 23, 1979, when the defendant's privately retained attorney entered his appearance, was caused by or created at the instance of the defendant who subsequent to March 8 requested and received several continuances to retain private counsel and to file motions. Under such circumstances the period from March 8 to July 23 may not properly be assessed against the statutory speedy trial limitation. *Saiz v. District Court.*

■ Nor do we find any violation of the defendant's rights under the Sixth Amendment to the United States Constitution and Article II, Section 16, of the Colorado Constitution. The constitutional right to a speedy trial attaches when a defendant is formally accused by a charging document, such as a criminal complaint, information or indictment, *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); and the burden of proving a violation of that right is on the defendant. *People v. Small*, Colo., 631 P.2d 148 (1981); *Gelfand v. People*, 196 Colo. 487, 586 P.2d 1331 (1978). Whether a defendant's speedy trial right was violated is determined by an *ad hoc* balancing of four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *People v. Small, supra.*

■ In this case the period intervening between the initial filing of a criminal complaint in the county court on January 3, 1979, and the trial on September 17, 1979, was neither excessive nor unjustified. Nor does the record disclose any assertion of the defendant's constitutional right to a speedy trial prior to the trial date itself. Rather, the record strongly suggests that the defendant "hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges" without, however, really wanting to be tried. *Barker v. Wingo, supra*, 407 U.S. at 535, 92 S.Ct. at 2194, 33 L.Ed.2d at 119. Finally, the defendant has failed to establish that his defense to the charges was in any manner prejudiced by the period intervening between the filing of the complaint and the trial date. The defendant's speedy trial claims are simply without merit.

### VI.

■ The defendant's final contention is that he was denied effective assistance of counsel, *U.S.Const.* Amend. VI; *Colo.Const.* Art. II, Sec. 16, because he was not able to hire an attorney until July 1979, thus leaving his attorney with insufficient time to prepare for trial. A defendant is not constitutionally entitled to errorless counsel but rather to reasonably effective assistance of counsel. *People v. White*, 182 Colo. 417, 514 P.2d 69 (1973); *People v. Gonzales*, 37 Colo.App. 8, 543 P.2d 72 (1975). In determining whether an accused has been denied his constitutional entitlement, a reviewing court must consider all the attendant circumstances underlying the entire course of proceedings and then determine whether there was a denial of fundamental fairness. *See, e.g., People v. Moody*, Colo., 630 P.2d 74 (1981); *People v. White, supra.* A review of the record in this case does not support the defendant's claim.

■ Upon his formal entry of appearance on July 23, 1979, the defendant's attorney filed a motion for discovery which the district attorney confessed and a motion to suppress which was vigorously argued on August 27, 1979. Additionally, defense counsel ordered and received a transcript of the preliminary hearing more than a month prior to trial. The record of the trial reveals that defense counsel thoroughly cross-examined the prosecution's witnesses, made numerous evidentiary objections throughout the trial, successfully argued a motion for a judgment of acquittal on the charge of possession of a narcotic drug for sale, section 12–22–322(1)(a), C.R.S.1973 (1978 Repl. Vol. 5), and presented an adroit summation to the jury in the face of overwhelming evidence of guilt. Such representation could not have been given without extensive preparation prior to trial. There is not even a suggestion in the record that the defense counsel's representation was anything less than competent.

The judgment is affirmed.