The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Andrew Elbert BOST, Defendant–Appellee.

No. 86SA453.

Supreme Court of Colorado, En Banc.

March 13, 1989.

Rehearing Denied April 10, 1989.

Barney Iuppa, Dist. Atty., David H. Zook, Chief Deputy Dist. Atty., Colorado Springs, Colo., for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Rachel A. Bellis, Deputy State Public Defender, Denver, Colo., for defendant-appellee.

LOHR, Justice.

The People appeal from a judgment of the El Paso County District Court dismissing charges of theft and aggravated motor vehicle theft in the first degree against the defendant, Andrew Elbert Bost. The district court held that dismissal was required because Bost had been denied his rights under the Interstate Agreement on Detainers (IAD), §§ 24–60–501 to –507, 10B C.R.S. (1988), and his rights to a speedy trial under the sixth amendment to the United States Constitution and article II, section 16, of the Colorado Constitution.[1] We reverse and remand for further proceedings.

### I.

It is necessary to set forth the facts in some detail in order to provide a background for discussion of the legal issues.

On January 19, 1983, an information was filed against Andrew Elbert Bost in the El Paso County District Court. The information charged Bost with one count of theft, § 18–4–401, 8B C.R.S. (1986 & 1988 Supp.), and one count of first degree aggravated motor vehicle theft, § 18–4–409(2), 8B C.R.S. (1986 & 1988 Supp.).[2] These charges arose from events that occurred in November and December of 1982. The El Paso County District Court issued an arrest warrant based upon these charges.

Bost was arrested on March 6, 1983, in Maricopa County, Arizona, on a charge of aggravated assault on a police officer and upon the Colorado warrant. The following day, the sheriff's department of Maricopa County, Arizona, notified the El Paso County Sheriff's Department that Bost was in custody. On March 17, 1983, a Maricopa County sheriff's officer telephoned the El Paso County Sheriff's Department, asking to be notified when Bost was to be returned to Colorado. On May 10, 1983, after notification to the district attorney, the El Paso County District Court called the case for review on the court's term day docket. The district attorney, apparently unaware of Bost's arrest, informed the court at that time that he wished the warrant to remain active until Bost was apprehended. Subsequently, Bost was convicted in Maricopa County on charges of trafficking in stolen property and aggravated assault, and on May 23, 1983, Arizona authorities advised the El Paso County Sheriff's Department that Bost had been sentenced to five years imprisonment in the custody of the Arizona Department of Corrections. On May 26, 1983, Bost was received by the Arizona Department of Corrections.

On June 9, 1983, the El Paso County District Attorney's Office sent a written

---

1. The district court focused its ruling on the IAD issue and ruled on the speedy trial matter summarily by stating that the defendant's "right to a speedy trial in general has been violated." The defendant's motion upon which the order of dismissal was based, however, relies on authorities that make it clear that the defendant asserted speedy trial rights under both the federal and state constitutions.

2. The information was amended on May 17, 1983, to include a third count of first degree aggravated motor vehicle theft. This charge apparently related to a motor vehicle in Bost's possession at the time of his March 6, 1983, arrest in the state of Arizona.

request for temporary custody to the Arizona Department of Corrections.[3] The Arizona Department of Corrections, however, has no record that it ever received the request. Consequently, Arizona authorities did not follow any of the procedures outlined in the Interstate Agreement on Detainers (IAD), §§ 24–60–501 to –507, 10B C.R.S. (1988), relating to final disposition of untried charges pending in other jurisdictions. Soon after being placed in the custody of the Arizona Department of Corrections, Bost asked his counselor at the penal institution to check on the pending Colorado charges. He repeated that request in September 1983. On each occasion he was informed that no record of those charges existed in the files of the Arizona Department of Corrections or the centralized databank.

On May 8, 1984, the El Paso County District Court again called the case pending against Bost in Colorado for term day review and again the district attorney requested that the warrant remain active until Bost could be apprehended. The next term day review on May 14, 1985, came and went with the same result. After becoming aware that the Arizona Department of Corrections had never responded to the June 1983 request for temporary custody, the district attorney sent another such request to the Arizona authorities on July 26, 1985. The Arizona Department of Corrections received and filed this request on August 12, 1985. Then, on September 5, 1985, the Arizona Department of Corrections notified the El Paso County district attorney that the request for temporary custody received on August 12, 1985, would act as a detainer against Bost and that the normal procedures outlined in the IAD had been invoked.[4] As required by article III(c) of the IAD, § 24–60–501(III)(c), 10B C.R.S.

(1988), Bost was advised by Arizona Department of Corrections officials of his rights under the IAD.

Bost did not file a request for final disposition of the Colorado charges pursuant to article III(a) of the IAD, § 24–60–501(III)(a), 10B C.R.S. (1988). Instead, he vigorously resisted being returned to Colorado. In particular, he contested his identification as the person wanted by Colorado and also contested the validity of the documentation supporting the requested interstate custody transfer. A hearing was held in Arizona on these issues with a result unfavorable to Bost. Bost then requested the governor of Arizona to disapprove the request for temporary custody pursuant to article IV(a) of the IAD, § 24–60–501(IV)(a), 10B C.R.S. (1988). The governor never granted this request. At some time after El Paso County requested temporary custody, Bost also filed a petition for habeas corpus relief in the Maricopa County Superior Court. A hearing on the petition was scheduled for May 15, 1986; however, the hearing was continued at Bost's request until August 15, 1986. The habeas corpus petition was dismissed in July 1986, so the scheduled hearing was never held.[5] In addition, the Maricopa County Superior Court issued a warrant on December 11, 1985, charging Bost with attempted escape based on events that took place in November 1985. This charge was later dismissed in March 1986 on a motion of the prosecution.

Colorado authorities took temporary custody of Bost on June 11, 1986, some three and one-half years after he had first been charged. Thereafter, Bost filed in the El Paso County District Court a motion to dismiss the pending Colorado charges due

3. This action was taken pursuant to article IV(a) of the IAD, which provides that the appropriate officer in the jurisdiction in which an untried information is pending is entitled to have a prisoner against whom he has lodged a detainer, and who is imprisoned in another state, made available for the purpose of prosecution in the jurisdiction where the charge is pending upon a written request for temporary custody. § 24–60–501(IV)(a), (V)(a), (d), 10B C.R.S. (1988).

4. For purposes of clarity, this temporary custody request will be referred to as the "August 12, 1985, detainer."

5. The record sheds no light on the basis for the dismissal. Presumably the dismissal resulted from Bost's return to Colorado on June 11, 1986, pursuant to El Paso County's request for temporary custody.

to alleged violations of the IAD and of his constitutional rights to a speedy trial. The district court held an evidentiary hearing on the motion on September 4, 1986. Appearing as witnesses on Bost's behalf were his father, sister, and a friend, who testified that they could no longer remember Bost's whereabouts at any relevant times in 1982 and the early part of 1983. Bost testified that he also was no longer able to remember specific times and places related to his activities during that period.[6] He further testified that he had been eligible for parole eighteen days after the August 12, 1985, detainer had been filed and might have been eligible for a temporary release program and other benefits of parole or pre-parole release.

The district court granted the defendant's motion to dismiss the El Paso County charges on October 10, 1986. As to the delays since the August 12, 1985, detainer was filed, the court found that Bost's rights under the IAD and his speedy trial rights had not been violated because he was responsible for the delays. The court held, however, that violations did result from the delay of more than two years between the sending of the first request for custody in June 1983 and the filing of the August 12, 1985, detainer. Specifically, the court ruled that the El Paso County District Attorney's Office was negligent in not following up on its June 1983 request for temporary custody. As a result, the court determined that Bost's rights to a speedy trial and his rights under the IAD, including his rights to prompt notification and to demand a speedy disposition, had been violated. The district court further found that the People had failed to prove that Bost suffered no prejudice from these violations.

In this appeal, the People challenge the district court judgment of dismissal on two

grounds: first, they argue that because no detainer was ever lodged against Bost in June 1983, no rights ever arose under the IAD; second, they contend that the record is insufficient to support a determination that Bost's speedy trial rights were violated.

## II.

As a preliminary matter, we reject Bost's contention that the district attorney's failure to file an amended notice of appeal within the allotted time deprives this court of jurisdiction. The People filed a notice of appeal in this matter on November 24, 1986, within the forty-five day time limit for the filing of such notices prescribed in C.A.R. 4(b)(2). The following day, the clerk of this court sent the district attorney a notice of non-compliance, indicating that the notice of appeal did not contain all the information required concerning the attorneys involved, was not accompanied by a complete certificate of service, and did not include a sufficient number of copies. The notice of non-compliance stated that a corrected notice of appeal must be filed with the Colorado Supreme Court on or before December 2, 1986. On July 22, 1987, the district attorney submitted an amended notice of appeal accompanied by a motion for permission to file the amended notice. In the motion the district attorney averred that the notice of non-compliance had been mistakenly overlooked but that the defendant had not been prejudiced, and contended that the oversight should not affect the validity of the appeal.

The Colorado Appellate Rules prescribe the procedure to be followed in the filing of appeals by the prosecution in a criminal case. § 16–12–102, 8A C.R.S. (1986). C.A.R. 3(a) provides in part:

---

**6.** In its findings of fact, the district court stated that "[t]he Defendant has presented evidence at this hearing from local witnesses who indicate that they could no longer assist him regarding a potential alibi defense because of the lapse of time since 1983. The Defendant himself has testified to this effect...." The transcript of the evidentiary hearing, however, reveals that Bost pointed to no specific theory of defense that had been impeded by the lapse of time. Rather, Bost testified that although he remembered the names of people he had known or worked with for some time, he had basically forgotten the people that he met "on just a casual basis and had a short relationship with...." In addition, the witnesses called on Bost's behalf, his father, sister, and friend, were not linked in any specific way to alibi or any other theory of defense.

Failure of an appellant to take any step other than the timely filing of a notice of appeal in the appellate court does not affect the validity of the appeal, but is a ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal. Content of the notice of appeal shall not be deemed jurisdictional.

A notice of appeal is designed to put the opposing party on notice that an appeal has been filed and to identify the trial court action from which the appeal is to be taken. *Widener v. District Court,* 200 Colo. 398, 615 P.2d 33 (1980). "If the prevailing party could not be misled as to the intention to appeal or as to the judgment from which the appeal is to be taken, any technical defect in the notice of appeal is harmless." *Id.* at 401, 615 P.2d at 34; *Happy Canyon Inv. Co. v. Title Ins. Co.,* 38 Colo.App. 385, 387, 560 P.2d 839, 841 (1976). If a notice of appeal has been filed within the time prescribed, only substantial compliance with the rules regarding the content of that notice is required. *Widener v. District Court,* 200 Colo. at 401, 615 P.2d at 34 (requiring only substantial compliance with the appellate rule prescribing the content of the notice of appeal); *see also B.A. Leasing Corp. v. State Bd. of Equalization,* 745 P.2d 254, 257 (Colo.App. 1987) (untimely service of notice of appeal does not defeat appellate jurisdiction where notice of appeal was timely filed), *aff'd sub nom. Gates Rubber Co. v. State Bd. of Equalization,* 770 P.2d 1189 (Colo.1989).

In the instant case, the district attorney filed a timely notice of appeal under C.A.R. 4(b)(2). Although the notice of appeal was technically defective, we conclude that it was adequate to invoke the appellate jurisdiction of this court under C.A.R. 3. The defendant does not contend that he was misled by the failure of full compliance

or was unaware of the prosecution's intention to appeal the district court order. The district attorney's notice of appeal clearly designated the issues to be resolved on appeal and the order of dismissal from which that appeal would be taken. We therefore reject Bost's argument that defects in the original notice of appeal prevented this court from acquiring jurisdiction.

### III.

We next address the question of whether the IAD has any applicability in the absence of the filing of a detainer and conclude that it does not.[7] A review of the relevant statutory and decisional law relating to the IAD will provide a helpful background from which to begin.

On numerous occasions we have discussed the adverse effects suffered by prisoners against whom detainers, which represent untried charges pending in a jurisdiction other than that in which a prisoner is incarcerated, have been filed. *See People v. Campbell,* 742 P.2d 302, 305 (Colo.1987); *People v. Higinbotham,* 712 P.2d 993, 996–98 (Colo.1986); *People v. Yellen,* 704 P.2d 306, 311–12 (Colo.1985), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582; *People v. Lewis,* 680 P.2d 226, 229–30 (Colo.1984). We have noted that prior to the enactment of the IAD, prison authorities often accorded outstanding detainers considerable weight in determining the terms and conditions of a prisoner's incarceration and release on parole, and that despite the serious consequences that would often befall a prisoner against whom a detainer had been lodged, "virtually any law enforcement officer—prosecutor, policeman, or judge—could file a detainer without any procedural prerequisites." *People v. Lewis,* 680 P.2d at 230 (quoting

---

7. In their brief, the People refer to the applicability of the Uniform Mandatory Disposition of Detainers Act (UMDDA), §§ 16–14–101 to –108, 8A C.R.S. (1986). The UMDDA, however, governs *intrastate* detainer cases involving prisoners who have Colorado charges pending against them while confined in Colorado correctional facilities. § 16–14–102(1), 8A C.R.S. (1986). In this case, the defendant was confined in Arizona

while the Colorado charges were pending. Consequently, we are faced with an *interstate* detainer case involving a prisoner against whom Colorado charges are pending while he is incarcerated in another state. The IAD, not the UMDDA, governs this situation. *See* § 24–60–501, 10B C.R.S. (1988). Therefore, we shall focus our analysis on the applicability of the IAD, as did the district court.

*United States v. Ford,* 550 F.2d 732, 738 (2d Cir.1977), *aff'd sub. nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)); *see also People v. Campbell,* 742 P.2d at 305; *People v. Higinbotham,* 712 P.2d at 997; *People v. Yellen,* 704 P.2d at 311–12. To curb these abuses, legislation has been widely adopted requiring that prisoners be apprised of the existence of detainers and be given the right to demand speedy disposition of the untried charges that those detainers represent. *People v. Campbell,* 742 P.2d at 305.

On the same day in 1969 the Colorado General Assembly adopted two acts addressing the problem of outstanding detainers: the IAD and the Uniform Mandatory Disposition of Detainers Act (the UMDDA), §§ 16–14–101 to –108, 8A C.R.S. (1986). Ch. 111, secs. 8–9, §§ 16–14–101 to –108 and §§ 24–60–501 to –507, 1969 Colo.Sess. Laws 286, 291–92. The IAD governs *inter-state* detainer cases, which involve prisoners confined in a state that is a party to the agreement and charged with crimes in another such state. § 24–60–501, 10B C.R.S. (1988); *People v. Newton,* 764 P.2d 1182, 1186 (Colo.1988). The UMDDA governs *intrastate* detainer cases, which involve prisoners in the custody of the department of corrections in Colorado who have Colorado charges pending against them. § 16–14–102(1), 8A C.R.S. (1986); *People v. Newton,* 764 P.2d at 1186. Both of these statutes reflect the same policy of facilitating speedy disposition of untried charges, and we have frequently stated that the principles of one may be applied to the other unless the provisions conflict. *See, e.g., People v. Newton,* 764 P.2d at 1186; *People v. Campbell,* 742 P.2d at 306.

The purpose of the IAD is to "encourage the expeditious and orderly disposition of [untried] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." § 24–60–501(I). Articles III and IV comprise the central provisions of the IAD. Article III provides a procedure by which a prisoner must be promptly informed of the source and content of any detainer lodged against him and of his right to request final disposition of the charges on which the detainer is based. § 24–60–501(III)(c). If the prisoner does make such a request, he must be brought to trial within 180 days unless a continuance is granted for good cause shown. § 24–60–501(III)(a). Article IV provides the means by which a prosecutor who has filed a detainer against a prisoner in another state can obtain the prisoner's presence for the purpose of trial of the charges upon which the detainer is based. § 24–60–501(IV)(a)—(c). Once a detainer is filed, the prosecutor can have the prisoner made available by presenting a written request for temporary custody to the officials of the state in which the prisoner is incarcerated. § 24–60–501(IV)(a). Trial must then be commenced within 120 days of the prisoner's arrival unless a continuance is granted for good cause. § 24–60–501(IV)(c). In the event that the speedy trial provisions of either article III or IV are violated, the action underlying the detainer must be dismissed. § 24–60–501(V)(c).

The protections and rights afforded a prisoner under article III of the IAD are applicable only if there exists an "untried indictment, information, or complaint on the basis of which *a detainer has been lodged* against the prisoner...." § 24–60–501(III)(a) (emphasis added). Similarly, article IV entitles a prosecutor to seek custody of "a prisoner *against whom he had lodged a detainer....*" § 24–60–501(IV)(a) (emphasis added). Thus, the provisions of the IAD are triggered only when a prosecutor files charges against a person serving a term of imprisonment in another state and files a detainer with the official having custody of the prisoner. *United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978) (writ of habeas corpus *ad prosequendum,* by which the United States obtains custody of state prisoners, is not a detainer and therefore does not trigger the application of the IAD); *People v. Newton,* 764 P.2d at 1186; *see also Dodson v. Cooper,* 705 P.2d 500, 502 (Colo.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 857, 88

L.Ed.2d 896; *People v. Yellen,* 704 P.2d at 311.

The crucial role of a detainer in activating these protective provisions was thoroughly delineated in *People v. Newton,* where we considered the applicability of article III of the IAD to charges not listed in the detainer filed against the defendant. 764 P.2d 1182. There we held that the dismissal remedy for violations of the speedy trial provisions of article III of the IAD applies only to those charges that underlie the detainer filed against the prisoner. *Id.* at 1189. Charges as to which no detainer has been filed are simply not subject to the speedy trial provisions of article III of the IAD. *See also People v. Greenwald,* 704 P.2d 312 (Colo.1985) (120–day speedy trial provision of article IV(c) of the IAD relates only to those charges that underlie a detainer previously lodged against the defendant).[8]

*Newton* provides the controlling precedent for our decision today. Since the district court found that no detainer based on the Colorado charges at issue here was ever filed or even received in June of 1983 by the Arizona Department of Corrections, the provisions of the IAD were not triggered at that time. These provisions did not become applicable until August of 1985, when the Arizona Department of Correc-

tions received and filed the El Paso County District Attorney's request for temporary custody, which the Arizona Department of Corrections treated as a detainer against Bost. At that time, the Arizona authorities promptly informed Bost of the source and contents of that detainer in accordance with section 24–60–501(III)(c) of the IAD. Those authorities also informed Bost of his right to request a final disposition of the Colorado charges and thereby invoke the 180–day speedy trial provision. He chose not to exercise this right. Moreover, because the delays since the lodging of the August 12, 1985, detainer are attributable to Bost, his statutory rights to final disposition of charges, whether measured under the 180–day provision of section 24–60–501(III)(a) or the 120–day provision of section 24–60–501(IV)(c), were honored.

## IV.

We next consider whether Bost's constitutional rights to a speedy trial have been violated.[9] Bost experienced a delay of approximately twenty-nine months between his March 6, 1983, arrest in Arizona, and the August 12, 1985, filing of the detainer in Arizona.[10] Another ten months passed before Bost was sent back to Colorado for trial on the El Paso County charges. The district court determined that the failure of

---

8. We have also considered whether the intrastate counterpart to the IAD, the UMDDA, is applicable in the absence of a detainer. *People v. Campbell,* 742 P.2d 302 (Colo.1987). In *Campbell,* we noted that the applicability of the UMDDA, unlike that of the IAD, is not specifically limited to charges on the basis of which detainers have been filed. *Id.* at 306. Consequently, we held that a prisoner's rights under the UMDDA to request final disposition of criminal charges are not dependent upon the filing of a detainer. *Id.* at 304. However, we were careful to point out that the IAD and the UMDDA are strikingly and purposefully different in that the UMDDA was intended to have broader scope than the IAD in according prisoners a right to obtain final disposition of untried charges. *Id.* at 307.

9. Bost has never claimed a denial of his statutory right to a speedy trial under § 18–1–405, 8B C.R.S. (1986), or of a right to dismissal of his case pursuant to the speedy trial requirements of Crim.P. 48(b). Speedy trial rights under the statute and the rule are triggered by the entry of a plea of not guilty. No such plea has yet been

entered by Bost as to the charges now before us, so far as disclosed by the record on appeal. *Cf. People v. Velasquez,* 641 P.2d 943, 950 (Colo. 1982) (if a defendant wishes to seek the benefit of the statutory speedy trial right, it is incumbent upon him to enter a plea of not guilty so that the period of limitation may commence).

10. In his brief Bost argues that the El Paso County District Attorney's Office used "dilatory tactics" during the period preceding the August 12, 1985, filing of the detainer in Arizona, and that during that time the district attorney knew that Bost was in custody in Arizona. Bost does not contend that the district attorney's office was negligent in its efforts to locate Bost prior to his March 6, 1983, arrest in Arizona. Therefore, we regard as the crucial time period the twenty-nine month delay between arrest and the filing of the August 12, 1985, detainer rather than the thirty-one month delay between the filing of the information and the filing of the detainer.

the El Paso County district attorney to follow up on the ill-fated detainer sent on June 9, 1983, constituted negligence and violated Bost's right to a speedy trial.[11]

"The constitutional right to a speedy trial attaches when a defendant is formally accused by a charging document, such as a criminal complaint, information or indictment[.]" *People v. Velasquez,* 641 P.2d 943, 951 (Colo.1982) (citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)), *cert. denied,* 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43. The burden of proving a violation of the constitutional right to a speedy trial is on the defendant. *People v. Velasquez,* 641 P.2d at 951; *People v. Small,* 631 P.2d at 154; *Gelfand v. People,* 196 Colo. 487, 489, 586 P.2d 1331, 1332 (1978). It is well-established that a defendant's speedy trial rights under the sixth amendment to the United States Constitution and article II, section 16, of the Colorado Constitution are to be evaluated by an *ad hoc* balancing of four factors: the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972);[12] *People v. Velasquez,* 641 P.2d at 951; *People v. Small,* 631 P.2d 148, 154 (Colo.1981), *cert. denied,* 454 U.S. 1101, 102 S.Ct. 678, 70 L.Ed.2d 644. "None of [those] four factors is indispensable to a finding that speedy trial has been denied. Nor is any one of them *ipso facto* sufficient to require such a finding. Rather all are interrelated and must be considered together with any other relevant circumstances." *People v. Small,* 631 P.2d at 154 (quoting *Gelfand v. People,* 196 Colo. at 489–90, 586 P.2d at 1332); *see also Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193. However, "[u]nless the [length of the] delay is at least presump-

tively prejudicial to the defendant, no extended inquiry need be made into the other factors which complete the test." *People v. Small,* 631 P.2d at 154; *accord Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192.

■ In resolving a speedy trial issue, a court must be mindful of the facts that a prisoner does not forfeit his right to a speedy trial solely because of his incarceration and that, at least where the prisoner seeks a speedy disposition, the prosecution has a constitutional duty to make diligent good-faith efforts to bring him before the court for trial. *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). We have previously held that incarceration under a prior conviction does not dissipate a defendant's right to a speedy trial, *Rader v. People,* 138 Colo. 397, 334 P.2d 437 (1959); nor does imprisonment in a foreign jurisdiction, *Egbert v. People,* 169 Colo. 169, 454 P.2d 811 (1969); *Rudisill v. District Court,* 169 Colo. 66, 453 P.2d 598 (1969), *cert. denied,* 395 U.S. 925, 89 S.Ct. 1779, 23 L.Ed.2d 241. Clearly, "the right to a prompt inquiry into criminal charges is fundamental and the duty of a charging authority is to provide a prompt trial." *Dickey v. Florida,* 398 U.S. 30, 38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970) (footnote omitted).

■ The difficulty of the task of balancing the factors set forth in *Barker v. Wingo* is illustrated by this case, which we regard as close. Turning first to the length of the delay, we note that the twenty-nine month delay between the defendant's arrest in Arizona and the filing of the August 12, 1985, detainer, while extensive, is not decisive when considered together with the other relevant circumstances. *See Barker v. Wingo,* 407 U.S. at 521, 92 S.Ct. at 2187 ("[w]e cannot definitely say how long is too long in a system where

---

**11.** The district court found that the delays since the filing of the August 12, 1985, detainer were attributable to the defendant and did not violate his right to a speedy trial. *See United States v. Jenkins,* 701 F.2d 850, 857 n. 8 (10th Cir.1983) (defendant alleging violation of sixth amendment speedy trial right will not be heard to complain about delay which he caused); *see also People v. Bell,* 669 P.2d 1381 (Colo.1983)

(delay caused or created by defendant will be excluded from calculation of time for statutory speedy trial deadlines). Bost did not appeal this portion of the district court's order.

**12.** *Barker v. Wingo* suggests that other factors may be relevant but identifies only the four. 407 U.S. at 530, 92 S.Ct. at 2192.

justice is supposed to be swift but deliberate"); *Perez v. Sullivan,* 793 F.2d 249, 254 (10th Cir.1986) (same), *cert. denied,* 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364. It is, however, sufficiently inordinate to trigger inquiry into the other factors. *See U.S. v. Jenkins,* 701 F.2d 850, 856 (10th Cir.1983); *People v. Small,* 631 P.2d at 154.

We next turn to the reasons for the delay. Although the Colorado authorities never explained why they waited so long to resubmit a request for custody to the Arizona Department of Corrections, neither did Bost present any evidence that the delay was a deliberate attempt to hamper the defense. Moreover, when the August 12, 1985, detainer was filed Bost compounded the delay by vigorously resisting return to Colorado for trial on the pending charges. The inference to be gleaned from the record is that the delay resulted from prosecutorial oversight and a lack of communication within the El Paso County District Attorney's Office and between the El Paso County District Attorney's Office and the Arizona Department of Corrections. Based on this record, the trial court apparently concluded that the delay of the Colorado authorities in following up on the Arizona Department of Correction's failure to respond to the June 1983 detainer constituted negligence and not a deliberate effort to undermine the defendant's speedy trial rights.

Turning to the third factor, the assertion of the speedy trial right, it must be determined whether Bost diligently sought to be brought to trial on the Colorado charges. To this end, it is significant that Bost never attempted to contact the appropriate Colorado authorities until after the August 12, 1985, detainer was filed. This omission may or may not be critical given that Bost requested that the Arizona authorities investigate the status of the Colorado charges.

Finally, and of great significance, it cannot be determined reliably from this record whether Bost has been actually prejudiced by the delay. A showing of prejudice, although not independently necessary to a finding of speedy trial deprivation, *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973), relates to the fundamental purposes of the speedy trial right. In this regard, the United States Supreme Court has identified three interests that the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193 (footnote omitted). Here, Bost was already in the custody of the Arizona Department of Corrections on other charges while the Colorado charges were pending. While the fact that a defendant is already imprisoned does not mean that he cannot be prejudiced by delay in being brought to trial on untried charges, *Smith v. Hooey,* 393 U.S. at 378–83, 89 S.Ct. at 577–80; *Dodge v. People,* 178 Colo. 71, 76, 495 P.2d 213, 216 (1972), the fact of incarceration does affect the weight to be assigned to the prejudice factor, *Moore v. Arizona,* 414 U.S. at 27, 94 S.Ct. at 190. In this case, any aggravation of the conditions of Bost's pretrial incarceration was minimal if not nonexistent, particularly since the officials of the Arizona Department of Corrections were apparently unaware of the outstanding charges. Furthermore, the record contains no evidence that Bost suffered continuing anxiety or concern over the outstanding Colorado charges. On the contrary, he testified that he thought the charges had been dropped when the Arizona authorities were unable to find any reference to them in his file after his inquiries in May and September of 1983.[13]

Nor does the record before us establish satisfactorily that the failure to expedite the detainer and custody process impaired the defense. In his motion to dismiss, Bost

13. Bost testified that when the El Paso County charges were made the subject of the August 12, 1985, detainer, his eligibility for parole, temporary release, and other potential benefits in Arizona were adversely affected. No other evidence appears in the record concerning these potential effects of delay in asserting the Colorado charges and bringing them to trial.

outlined no specific defense theory and failed to demonstrate how the diminished memories of his father, sister, and friend undermined his trial preparations.

In short, the present case poses a close and difficult question as to whether Bost's constitutional rights to speedy trial have been honored. In its ruling dismissing the charges, the district court focused almost exclusively on the alleged violation of the defendant's rights under the IAD. Its reference to the speedy trial violation is terse and conclusory and contains no mention of the balancing test that must be applied under *Barker v. Wingo* and *People v. Velasquez.* We believe that under the circumstances of this case the essential task of balancing the constitutionally relevant factors should be accomplished by the district court sometime during or after the trial on the charges. The evaluation of any prejudice that Bost may have experienced as a result of the delay can best be done at that time. Only then will the nature of Bost's defense be established and can the effect of the passage of time on the ability of Bost to locate witnesses and the ability of the witnesses to recall relevant times and events be assessed. *See United States v. MacDonald,* 435 U.S. 850, 858–61, 98 S.Ct. 1547, 1551–53, 56 L.Ed.2d 18 (1978).

Accordingly, we reverse the judgment of the district court and remand the case to that court for further proceedings consistent with this opinion.